Good morning, your honors. My name is Russell Handy, and if it pleases the court, I represent the plaintiff and appellant, John Karczewski, in this case. Well, I really butchered the name, didn't I? Yeah. One housekeeping matter. The court had allocated ten minutes for each of the amicus to argue. The DOJ, who is the amicus on our side, is not showing up. That's correct. We understand that. I was wondering if I'd have any opportunity to respond to amicus argument. No. We invited amicus to provide their perspective, and one declined, and there we are. Thank you. Your honor, the issue before the court, I mean, this is a fascinating case, and the issue before the court is going to have tremendous implication for millions of Americans going down through the years. The process of purchasing a car is perhaps the second most important purchase that most Americans will ever make in their life, and many people will do it on two or three occasions throughout their life. The process entails entering into a contract for five or six years, tens of thousands of dollars being put on the table. Dealerships understand how important it is for people to be able to test and to drive vehicles when they're making this very important decision. However, if a dealership does not provide vehicle hand controls to allow people with disabilities to test drive, they will be denied that opportunity, the opportunity to participate in something that everyone recognizes is very important and is common throughout American society. Can I ask a clarifying question? Sure. Forgive me for interrupting. I'm always worried about the time ticking away, and I want to make sure you get to the questions for us. I want to know, and I think clearly your client is seeking a ruling that requires these hand controls to be provided on a temporary basis for the test drive on behalf of your disabled people, but can the complaint be read to require that a policy or practice of a dealership be changed to permit a prospective purchaser to install those at his or her own expense for the purpose of conducting a test drive? Well, I think that if a person showed up under the ADA, if a person showed up and asked for permission to bring their own hand controls and install it, I think that the dealership would be obligated to make a reasonable modification in their policies or practices so long as it didn't work a fundamental alteration. So here's my question. Yeah. To be clear, I want to know whether, please, whether your complaint includes that claim. I understand it includes that we want the dealership to do this for us. Are you also asking for a ruling that the dealership's policies or practices should permit consumers to do that at their own expense? Our client wasn't asking for that. Whether or not an injunction, when we get down to an injunction level, the court can fashion injunctions to carry out things, whether or not there can be some leeway. I remember in a recent case, the Fortinet case versus AMC, when it got down to the injunction level, we were able to craft the court, issue something that they found was a balance. So, again, I'm not trying to use a lot of your time. Yeah. I want to know if you want me to read your complaint to include that request here. That is not part of our complaint. All right. Well, it may matter to the answer because some of the portions of the statute have limitations such that if it results in an undue burden on the facility or the entity, then an accommodation is not required. So if it's you've pleaded that it's cheap and easy. And so if your pleading is adequate, that all may be litigated later. Right. But it might matter to the answer. And I agree. And that is something that I think, and that's what a lot of the amici for the defense has argued about this undue burden and so forth. But I think it's misplaced. We're not there yet. Right. Exactly. And so if it isn't. Which provision should we be looking at? Should we be looking at the architectural provision or the policies and practices provision? The Department of Justice says both. Yeah, right. We're not here. But I think primarily it's the architectural barrier. That's the way that we looked at it because where vehicle hand controls are identified in the regulation itself is under 36.304B21. Right. But it's not that hard. Go ahead. No, go ahead. That doesn't mean it fits here. So I can imagine a facility or two where the hand controls fit under that regulation. For example, Mall of America is selling, providing an indoor shopping experience. And so if we're talking about accessing that facility, then a cart, you know, for people with mobility issues that has hand controls, that makes some sense to me. Same thing if an individual is trying to access a golf course, you know, any area where the facility itself is really big and there are mobility problems. But that's not what we're talking about here. Yeah, even the DOJ's illustrations in their technical assistance manual deals with rental car agencies. That's their primary example that they gave. A rental car agency is selling the ability to use a car temporarily. Right. An auto dealership is selling a car. Right. That's different. And we're not asking that they should sell a car with vehicle hand controls. I understand. Right. We're just saying when they offer a privilege, an opportunity to test drive, to do something different than the actual sale of the car, that they have an obligation that springs to life. That's what the DOJ is saying. Right. That's what we're saying. We're trying to figure out which, and you're putting it in under the architectural provision, which seems like a really square peg in a round hole to me. Yeah, the word architectural throws people off. It is an odd word. But yet the word facilities are defined. Well, it's more than odd in that sense. If you look at the regulation, it's got things that are truly architectural, starting with things like ramps and doors and things that are parts of buildings. And it goes building, building, building, building, building, car hand controls. It really doesn't fit. There's 21 things on that list, and 20 of them deal with buildings, and one of them does not belong on the list. And I talked to the DOJ about that when we were discussing this case, and he said, I'm speaking for him, but I'll say it. It shouldn't be that odd because you have all these facilities and all these, we have paths of travel, sidewalks that are covered. We have building structures. We have signs. We have all these things. And it goes beyond that in the access standards. It also talks about auxiliary aids and communication devices. But when it comes to vehicles, manufacturers are not required to create accessible vehicles. So there's not any scoping requirements on how vehicles are to be created. And when it comes to vehicles, which is a huge part of American life, really the only thing that businesses can do who have already acquired this already built thing is, and the most important thing is to provide vehicle hand controls. And so that's really the only thing. There's 21 things, but it's not surprising that the vast majority of them deal with all the other things that are out there. But you could use that same reasoning to say that bedroom furniture is architectural if it's not at the correct height or a desk is architectural. It just doesn't fit. But I guess I'm not sure why that matters. And fundamentally, even if we were to say that the regulation doesn't make any sense and isn't entitled to deference, I'm not sure why that ends up mattering because the general prohibition in the statute prohibits discrimination, including the denial of an opportunity to participate in or benefit from goods, services, and privileges. And I'm not sure why we don't just go to that and not worry about whether it's architectural. And that's why the DOJ says it can fit under both things. And I would just say with – That's a different point. That's a different point. The point is the statute talks about includes. It said discrimination includes. Right. But it's not limited to. So the suggestion is why does it have to fit under any one of the four sub-provisions? You're right. It doesn't. There's a general rule, 42 U.S.C. 12182A. There's a general rule that guides everything else. And then there are specific prohibitions that are spelled out. But there's been a number of things that have been – That's what we just said. You're right. We know that. So here's the question. Is there any case law that's ever done that, sir? Case law that's ever done that. There are some cases that deal with the use of facilities. For example, one of the examples is in Fortinet versus AMC. They had fully – everything was compliant, and it had to do with the use of the facilities and that someone could have a meaningful opportunity to use and participate. So that was an interesting step away. I don't know if there's any cases that would be on all fours with this case. I would like to make one point. When we talked about bedroom furniture, no bedroom furniture has to be created accessible because manufacturers don't have to do that. But hotels that now let people use those bedroom furnitures, there's all kinds of obligations about height. That's like the rental cars, though. That's a completely different thing. Because they're selling the temporary use of. It's a different deal. I'd like to ask you if I may change gears just slightly with my colleague's permission. I'd like you to address the regulation in 36.306, which says that a public accommodation is not required to provide its customers with personal devices, including things like wheelchairs. And I wonder why that wouldn't cover hand controls, which are also personal devices. I think there's two reasons why it wouldn't. First of all, we know this court has said repeatedly that one of the canons of construction is that we don't interpret a provision such that it's internally contradictory with other provisions found in the same statutory scheme. This isn't a statute. It's a regulation. It's a regulation, but the same canon of construction applies. And here in 304, they say vehicle hand controls. And then in 306, they say you don't have to provide personal devices. So the DOJ and their technical assistance manual, the Federal Register, all refers to this. The DOJ did not believe that there was any inconsistency with saying vehicle hand controls and personal devices. Personal devices are not defined anywhere. But throughout the code, there are a number of examples where there is equipment that has to be provided that the DOJ does not believe to be personal devices. One of the big ones is in the technical assistance manual, 3-4.5000. This is a supplement. And they give the example of the laundromat. And there you have to provide assistive devices, such as a wand or mechanical grabber, in order to reach inaccessible controls. Well, vehicle hand controls are very similar to that. It's giving you the opportunity to control something that you can't otherwise reach because of your disability. If your complaint alleges, and we're just at the complaint stage, if your complaint alleges that there are universal controls that fit anybody, but if that proves to be incorrect later in the litigation, then the provision that Judge Graber is citing, would that knock out your client's claim? No, it wouldn't. And when we say universal controls and we say fit anybody, I mean, obviously there's people that are so profoundly disabled they can't even use their arms. There's quadriplegics who can't. I'm talking about the vast majority of people who have full upper-body mobility. And there's a lot of them. They play in wheelchair softball leagues. They're Paralympics. There's so many people who just can't use their lower extremities and have been driving. My client's been driving for 10, 15 years. They drive with vehicle hand controls. And these controls that are put on there, these portable controls that all the rental car agencies across the entire country now use, and they only have, like, three or four types, they can be used. They are universal. Anyone who has full upper mobility, just like gas pedals and brake pedals are universal to all of us, if you have full upper-body mobility, you can use them. But if you are a person who has, for whatever reason, a type of disability that doesn't, it can't be accommodated by one of those universal controls, then the regulation that Judge Graber just read comes into play, doesn't it? If it's an individualized, a personalized device? Yes. If there was something that the standard universal controls just wouldn't work for them, then we're into a whole different situation where someone's asking for something very particularized, something that's very individualized. And I don't know at what level. Again, the Department of Justice never described what a personal device is. They talk about vehicle hand controls not being that. They talk about mechanical grabbers to control things not being that. And there's a bunch of other examples. And in the Federal Register it says that under these obligations there would be many opportunities. They will require the revision of accessible equipment. And so where do you draw the line between what's personal and what's just more universal? It's hard to know. But we know the DOJ itself has said that vehicle hand controls do not fall into that category. Counsel, would you turn to 36-307, which is the inventory regulation? Okay. Used cars are cars that are generally sold as is. You want to negotiate something different, you can negotiate something different. But usually you're taking the car as is. They're not going to change the paint. They're not going to install new seats and so on. So why is it that you can require somebody to alter the car in a way that may suggest how they might alter it themselves in the future and not call that a change in the inventory? Because they're not changing the inventory. The inventory is going to be sold exactly the same. They're asking for something temporary and portable to be put on there so they can make their own assessment. And that may not even have anything to do with it. But it's an assessment as to how they would regard the car if they altered it in the way they intend to alter it in the future. I don't think that's true because most people who end up buying a car, they get permanent hand controls installed. And they're different. And so these are temporary hand controls. No one's going to continue driving afterwards if they buy the vehicle with temporary hand controls. They're going to get the permanent ones installed. And so these are just temporary so they can test drive and find out all the other information about a vehicle, how it rides, how it feels, how it maneuvers, how they like it. And so ultimately when they buy it, they're not going to stick with portable hand controls. If this is going to be their vehicle that they use every single day, they're going to get permanent hand controls installed. If we were to adopt your position, would any used car lot have to be prepared to install hand controls? Would every used car lot? Yes. I think that they would have to take some proactive steps to either have, just like the rental car agencies do, to have a relationship with mechanics that do this. They can keep it on hand or not. There certainly is a difference between going to a major used car lot where they're selling certified cars and have mechanics and bays on site and the mom and pop used car lot that's got 20 cars down on the street corner and is operating out of a trailer. And the DOJ talks about that in its technical assistance manual. And it gives an example. You may have a rural rental car agency that's very small but no mechanics on site, and it may take three to five days to give them advance notice so they can arrange for something to happen. There's this balancing test under the readily achievable defenses in the ADA. Now, the same thing would apply to a smaller size. But based on their size, nobody would be excused from this? No one would be excused. It would just be how much advance notice you need. So if a person goes to a smaller used car lot and says, I really am interested in that Camaro, I'd like you to get vehicle hand controls, and the person says, we've never done this before, we'll look into it, it might take us a week, and you come back in a week and test drive your thing, that would be totally legitimate. It might say two weeks. What if I decide I want to go test drive the Subaru and then I want to go back to look at the Honda again? People do that back and forth. They narrow their scope. Would you have to put it on each time? I think you would. And it may take a person with a disability weeks to work through this process. There's no way to get around all the inconveniences that come with someone who's disabled, right? They're not entitled to have immediate or perfect service or what they might want in their mind. So we tell clients all the time, you may want that, you're not entitled to it. But there is something there is entitled to, and that's to talk to a dealership and say, with enough notice and working it through, saying, I'd like to have vehicle hand controls, portable ones, put on so I can test drive your vehicle. And we're saying this is an obligation the DOJ says exists. It's an appropriate interpretation of the statute. I think they are entitled to Chevron deference. And even though it may take time and they have to work with the size of the company and so forth, I think it is an obligation that exists and they should be required to do so. Do you agree with the DOJ's position that this could fall under the policies and practices provision? I do. Because if they have, you know, businesses that have an otherwise legitimate business policy, we don't provide vehicle hand controls, have to modify their policies when requested in order to accommodate. This would fit naturally under that for someone to say, look, I'm disabled. Because of my disability, I can't, you know, push pedals. I'd like you to get some vehicle hand controls and put it on there for me so I can participate in the same privilege that you offer someone else. Why is that different from a bookstore saying it's our policy and practice not to carry books in Braille? Because that's the inventory, right? And so, but now if the same, if that same business has someone who… Again, the bookstore is selling what it's selling and you can buy what's on the shelf. They're not providing you with a reader. They're not providing you with a magnifier. They're not providing you with a lot of things. And the used car dealer says, look, this is what it is. It's a $2,000 car and you want the car, you can have the car. Yeah, but what they're saying to the customer is saying you can take the car off site. You can go drive it. Take it on the highways. Do this. We're offering a specific and discreet service, right? People aren't doing that at bookstores. They're saying, no, take it home, try it out, do this, test it. Sure, but it's a bookstore. Here's a couch over here. You want to sit down and browse through the book for 10, 15 minutes, two hours. We don't care. There's a Starbucks adjacent to the Barnes & Noble and you can go sit over there and look at the book and decide whether you want to read it. I mean there's a lot of, to say that this is simply a policy and practice and comes under that, almost anything can be characterized as a policy or practice. Again, Barnes & Noble may say it is not our policy and practice to carry Braille books. And that would discriminate against certain of your clients. And fortunately for businesses, bookstores, it's actually specifically addressed where they don't have to go and get specific. But it does say that if a person, if they normally make requests for customers, customers say, can you order a special item? And they normally do that. They don't have to do that to order Braille books to have them come in. So there are obligations they have either there. And you might have a different argument if you had a particular used car dealer that says, we make accommodations for some kinds of folks, but we don't make accommodations for others. You might be able to say, wait a minute. Once you go down that road, you've got to be able to help these folks with the hand controls. Judge Bybee, I agree that there is, there's degrees here. And it's sometimes hard where to draw the line. But the DOJ has drawn a line on this particular issue, says this does fit within the mandate. It's important enough when you look at the findings and purposes of the ADA to make sure that people are, that there's not generalities or stereotypes or outright exclusionary requirements or transportation barriers or those things they talk about. They've identified this thing as part of their notice and rulemaking. It's actually in the code of regulations that went out there. For architectural, under the architectural provision. Yeah. Installing vehicle hand controls and rental car agency, I mean, putting them on vehicles that are going to be used. And I do think, by the way, that the dealerships are selling that service because it's part of what they offer. If there's a dealership that doesn't provide test controls, driving, and a dealership that does, one gets a commercial advantage. And so it is part of what they're offering. And it is a service, a valuable service. Is it possible that that number 21, the vehicle hand controls, has an application someplace else besides car dealerships? Other than car rental agencies and car dealerships, I would imagine it would be something where maybe perhaps they offer a vehicle for driving around a site like golf carts perhaps. What about a huge indoor shop if that's the facility? I can imagine, or a golf course. I can imagine places where provision number 21 does fit where the facility is not a car, but it is a really vast expanse like an indoor shopping facility. Yeah, I understand that. But the term facility has been defined by the code, and it means conveyances and equipment as well. And it's also defined in the TAM as meaning a vehicle. So the word facility is defined by code in the regulation itself that went out for notice and rulemaking. It's broader than what we typically think of like a facility. We can point at it. We can draw a picture of it. I'd like to reserve the last minute for rebuttal if I might. You may do that. Thank you very much. Good morning. May it please the Court. Lon McIntyre on behalf of the Appalee DCH Mission Valley Honda dealership. I think the Court's questions have identified some important issues in this case, and it involves both what has been alleged in this particular case and what the issue is that's before the Court based on those allegations. And it also involves an important harmonizing of all of the regulations and making sense of them so that in no way is any one of them completely eliminated. No, really, we have to start with the statute, not with the regulations. And my biggest concern is that everybody's focused on these specific examples, but the statute begins with a general rule and a general prohibition against discrimination in the opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of any of the covered entities. And without even thinking about those five or six, I forget how many specific examples that are in the statute, why isn't this squarely within the opportunity to participate in or benefit from the goods, services, and privileges of a car dealership where certainly it's either a service or a privilege to be able to test drive a car? So why don't we just start there and not worry about all those specific ones at the end? Well, first of all, Congress enacted a very general and broad statute. Right, that's my point exactly. And requested that the Department of Justice enact regulations to provide guidance on what these general and specific activities that the statute is intended to address. And the regulations answer the question not to your liking, I guess, but I'm not sure even in the absence of the regulations that appear to cover this or at least arguably cover it, I'm not really sure how you don't fall within this general rule. Well, I don't see how we can ignore the regulations that are very specific and in particular the regulations that recognize a balance between guaranteeing access and the cost to businesses of providing certain things. But isn't that later in the litigation? Because the complaint says this is cheap and easy. And it may be that in your answer you end up saying, no, it's expensive and it's hard and it's an undue burden and it fundamentally alters what we're providing, in which case you win. But it seems to me that the complaint itself at least purports at the outset to negate that defense. Well, I believe that actually a careful reading of the complaint shows that the two things that the plaintiff was seeking were that we provide a vehicle with hand controls for him to use. And he also alleged not that they are universal in design, but they did not allege that they can be universally installed on any vehicle for any person, no matter what their disability. That's why I'm saying doesn't that belong later in the sort of procedural posture of the case? Because right now we have a complaint that says, I'm denied the privileges and services of test driving a vehicle that is being sold and people who don't have my physical condition get that privilege and are given that service. And it's easy for them to fix this and it's cheap. And that all may be wrong later on, but why doesn't that state a claim? I don't think that it's enough to state a very general claim based on general language in the statute, while at the same time disregarding the regulations enacted by the Department of Justice that was empowered by Congress to interpret with that very vague, general, broad standard. And we have specific regulations that are interpreting that standard. And the specific claims that we're looking at in this particular case, and as was conceded this morning during oral argument, is that the lack of vehicle hand controls is an architectural barrier. So I don't think our analysis can simply sweep the statement of the claim specifically within the general language. What if we agree with you about architectural barrier? What if we agree with you that that might work for a different situation, but not for the sale of a car, off of a car lot? The other argument is that it may fall within subprovision to policies and procedures. What is your response to that, please? Well, my response to that is if the policy or procedure that they're asking for requires something that's not required by the regulations, in other words, it requires us to provide personal devices, it requires us to alter our inventory, those things are not within the reach of the ADA. So in other words, I'm understanding you to say that the statute's very broad. The statute says discrimination includes a bunch of stuff. And then whatever we might fit within that or might be fitted or fall within that certainly can't include something that's specifically excluded by a reg. That's your position? That is one of my positions. And you think the regulations knock out plaintiff's claim, both because it seeks modification of inventory, is that right? Yes. And? It requires provision of personal devices, and it is not an architectural barrier that is not consistent. So my hypothetical is that I agree with you about architectural barriers. So just to go back to the other ones, the modification of a personal device, his response to inventory is that it's temporary and we're not asking you to permanently modify your inventory, but to adapt it just so we can participate in the privilege, right? The privilege of taking a test drive. Okay. And your response to that is you still think it's a modification of your inventory? Absolutely, because the experience that they're having in driving that vehicle is a modified experience. And there is no language in the requirement, in the regulation that exempts inventory from alteration that has any kind of temporal quality. It doesn't say except for temporary modifications. It's also possible to read this modification of inventory regulation as talking about the actual goods that are for sale, not temporary modifications of inventory. That is, they don't have to stock cars for sale that already have particular special devices in them. But I think that's what the regulation appears to be getting at. Well, I understand the distinction that you're making, but I also have to go back to the premise that there is no limitation on that language and the fact that what plaintiff is asking for is us to provide a vehicle with hand controls installed. And that is a modification of our inventory. Just as with a bookstore, you're not required to provide a couple of pages in Braille so that a person can have the privilege of previewing the book like somebody who doesn't need Braille. No, but if you offer services such as reading to small children a small part of a book so that they can tell if they want to buy it, but you decline to read to a blind adult, that might be more equivalent. Well, actually, I think the thing that makes it different is that you're offering services that are covered by other statutes having to do with communications. And this is a service, too, though. And there are very specific regulations that talk about providing communicative, overcoming communication barriers. But this is a sale. We're in the business of selling inventory. We're selling a vehicle. Right, and I have one more question, though. It seems quite obviously, I think as my colleague described it, a square peg in a round hole or vice versa to say that this is architectural. But the regulatory definition of facility includes rolling stock or other conveyances. And what does that do to this concept that it's about a facility, even though that's not the normal terminology that we would use to describe a vehicle? Well, I think that trying to fit a vehicle for sale within those definitions illustrates. But it is the definition. It's the regulatory definition. It's the definition of a facility. Correct. But a rolling stock is a railroad car. Conveyances is so broad I'm not even sure exactly what it means, but it doesn't mean inventory for sale. You have to modify a railroad car, right, because you're selling the transportation. That's right, you're in the business. And I think you'd have to modify if it's, as I said, an indoor shopping experience or a golf course, you're selling that experience. So the facility has to be modified to allow access to that. That's why there's a real difference, I think, between a car rental agency and a car lot that's selling cars. Absolutely, I agree. And it's easy to think of a lot of reasons why plaintiffs run into a whole lot of problems when we get to a reasonable accommodation about when we really talk about the feasibility of this and the cost, what it's going to cost. And you've briefed that. You've talked about insurance and technicians and on and on, but we're not there yet. So I really struggle with this notion that the statute says discrimination includes, but it's not limited to. What about that? Well, again, I think we have to go back to what is before the court in this particular lawsuit. And what's before the court is a request that this dealership provide a vehicle with hand controls. Right, so what if I think that's not modifying the inventory because they're not asking you to sell a modified car, right? Okay. So if that's the case and we're not talking about architectural, then what's your best argument they should lose at the 12B6 level? Well, if we look at the allegation of the complaint, what they've requested is that a facility, our dealership, provide vehicle hand controls, and that's at ER 14, and that they provide vehicles with hand controls. And so on any level, we're looking at these three regulations that are potentially applicable, and having a dealership being requested to provide vehicle hand controls violates the personal device section, 36.306. It also does not constitute an architectural barrier, and we've made our arguments about why this is not an architectural barrier. It's not a facility or rolling stock, et cetera. We're in the business of selling goods. But what about the personal device exception? His response to that is that they're not talking about an individually tailored personal device. They're talking about something that's much more universally applicable, and if anybody shows up, any individual consumer shows up, and those don't work for him or her, the dealership doesn't have to go that far. That's his response. Well, I think that's an interesting response, but the reality is, and Amicus will speak to this, is that, and he has not alleged that they're universally usable by any disabled person. The reality is. But that's the point. He's saying that you wouldn't have to go that far. You'd only have to go as far as Hertz or Avis. But his claim is that we failed to provide a vehicle hand control, and he didn't claim that he would be able to use a vehicle hand control. They're very personal devices. No, ma'am, you're not. We're just talking past each other. I understand his allegation to be that you wouldn't have to do that. It's not any kind of a personal adaptation, individualized adaptation, but why shouldn't a car dealership be required to do what Hertz or Avis has to do? What's the best response to that? Because a car dealership is not in the business of providing temporary use of a vehicle. That's the only thing that a rental car offers, and without the vehicle hand control. But you are. You're offering the special service or privilege of test driving a car temporarily. And, you know, usually the salesperson goes with you to make sure you don't steal it and don't get lost and don't get into an accident. It's part of the service that is provided by a car dealership. But the only way that a person – the statute's clear that you don't have to provide, and this is where the balancing comes in. You do not have to provide personal devices. For example, they say wheelchairs. Now, without a wheelchair, a person cannot even access the goods that you're talking about getting to. You're not required to provide it. That's a personal device, just as with the vehicle hand control. It's personal to that person. If they couldn't use it, then it wouldn't be of any use to them. It's personal before and after the privilege. The wheelchairs is interesting that they would include that, because things like the eyeglasses or hearing aids are the kinds of things that you don't want to pass on from one consumer to another. Maybe eyeglasses not so much. Hearing aids, you know, I mean, we use 3D glasses if we go to the movies and they get passed on to be between people. But wheelchairs is a really interesting omission from that regulation, because at facilities like Disneyland, you have wheelchairs that are available. They have wheelchairs and little electric carts at the supermarket for people who want to use them to run up and down the aisles. So how is this more like a wheelchair than something else? What makes it so personal? I mean, if you could tell me it was like a hearing aid, that would be a powerful argument. I'm not sure you can. Well, and I think Amicus will address this, but they are highly personal because there are so many different kinds of hand controls. But that's not the allegation in the complaint. The allegation in the complaint is that there are universally available ones that are cheap and easy, and that may turn out to be false later on. But we have to take the complaint as true for purposes of motion to dismiss. Well, in reading the complaint, what they allege is that companies sell and will install vehicle hand controls that are universal in design, meaning that they can be used on any vehicle. He does not allege that they can be used by any individual that needs a hand control. He alleges that he could have used them. I mean, we're at the pleading stage. We have to take everything he says as true. And it doesn't matter if it actually turns out to be. So it may be hard. It may be expensive. It may be that these things don't even exist, even as they've been alleged. But none of that matters at the pleading stage, at the complaint stage. It's all reasons you might win at the next step. But those are all reasons you might win at the next step. But going back to the three provisions that we're talking about, personal devices, alteration of inventory, and then the architectural device, his allegation is that there's a set of uniform controls out there and that car rental agencies use them. And sometimes they don't fit for some people, and I think probably sometimes they don't fit for some cars. But to the extent he's talking about uniform set, and that's what his complaint says, what is your client's best response, please? I don't think that he does allege that there's a uniformly usable vehicle. I don't think we're misunderstanding the allegation in the complaint. If it's read carefully, I think you can see what he says. He says meaning that they can be used on any vehicle. It's at ER 12. And your response is that that doesn't exist factually? Well, my response is that the complaint does not allege enough. And what he's asking you to do is make a very broad rule under a very general kind of concept and argument that, first of all, he hasn't alleged the right to. Secondly, that he cannot state a claim to as an architectural barrier, and he cannot state a claim to as a policy, practice, or procedure because it would require fundamental alteration of this business and the inventory and the personal devices exceptions. So paragraph 16, there are numerous companies that sell and will install vehicle hand controls that are universal in design, meaning they can be used on any vehicle and their installation does not render any safety features inoperable or cause any permanent modification or damage. Is there another provision in the complaint you want to call our attention to? No. That's the one that I was focusing on, Your Honor. Okay. And I think that it is very relevant, the fact that in reality, which we do need to consider when making these rulings, that there are no allegations and there can't be, that there's a single vehicle hand control that can meet every disability need. And that's a very important distinction because you're also being asked to formulate this rule that you have to have on vehicle hand controls. I'm not actually being asked to formulate any rules. All we're being asked is whether this complaint on its face states a claim. It doesn't mean he'll win. It doesn't mean that there's any particular result to that. So it's actually a pretty narrow question. Yes, and you're being asked to rule as a matter of law that he has stated a claim that this is an architectural barrier under the ADA, and we've put forth our arguments why it's not, and I think that's pretty plainly stated. And that he's asked for, the nature of the denial that he's asked for or premises his claim on is not within the ADA or the regulations that have been set forth by the Department of Justice. So I think that the fundamental question that's before the court is whether to allow a claim to go forward when there has not been an adequate allegation of what the plaintiff is now saying they are seeking. But if you look at the allegations, and even accepting them is true, that he has not stated a claim under the ADA for discrimination. There are specific regulations that we have to consider in making that determination. We have to harmonize them. There are ways to harmonize them. I think the rental car agency, where it provides a service to, and that's all that it is providing and it's in the business of, is an entirely distinguishable business. And I think that it's very telling that in the illustrations that the DOJ sets forth in describing what the statute means, it talks only about rental car agencies. There's no mention of a car dealership as an illustration. There's no mention anywhere of what should apply to a car dealership that's in the business of selling vehicles and is not required to modify even. There's no limitation on whether it's temporary or not permanent. They're not required to make any modifications to their inventory. The plaintiff has access to the goods, has access to the inventory. There's no architectural barrier to that access. And for those reasons, I would request and encourage the court to affirm the district court's ruling. Thank you, Counselor. Thank you very much. We'll hear from Amicus now. Good morning, Judge Graber, Judge Bybee, Judge Kristen, Felicia Reed of Hirschfeld Kramer, for Amicus Curiae National Automobile Dealers Association, the California New Car Dealers Association, and the National Mobility Equipment Dealers Association. Thank you, first of all, for giving us the opportunity to address the court on this issue. In our briefing, we've offered quite a bit of detailed, factual information about modification of vehicles so that disabled can use them in their daily lives to encourage their mobility and inclusion in this society, and that is very important to Amici. But I wanted to emphasize this morning, as the court has recognized, this is a legal issue that is being decided on the pleadings. And we think that it can be decided on the pleadings based on the two regulations that have been cited, the Personal Device Regulation 36306 and the Inventory Modification Regulation at 36.307. It's clear, at least to Amici, that the hand controls alleged in the complaint are personal devices. There is no requirement in the regulation that a personal device be individually prescribed. How is that? You know, part of the problem here is trying to reconcile all the various regulations. And clearly, by including hand controls in the list of architectural barriers, whether it's a square peg in a round hole or not, it would seem that the government does not think that is inconsistent with the regulations that you've cited. And therefore, implicitly at least, it views those others as not relevant. So what do we make of that? Well, I think we need to harmonize here the Personal Device Regulation and the Inventory Modification Regulation. But we have to harmonize it also with this other regulation that says you've got to do hand controls. Maybe DOJ just put it in the wrong place. Well, I think it's kind of a mystifying regulation. But certainly personal devices are not just things that are personally prescribed. They are devices that a disabled individual uses in their daily life to enable them to carry out the activities of daily living. And certainly driving would be an activity of daily living that an individual who cannot use feet to drive would need hand controls in order to perform. So if they are universal, they're still a personal device. And there are certainly disabled people who use... But the handicap button that you push to open the doors might also be described as a personal device. It's an aid that other people don't have to use in order to gain access to the building. But that would be required under both the statute and the regulations pretty clearly. But the disabled individual does not carry that button with them in their daily life. So the plaintiff here, once he buys a car... But they're not asking to carry these hand controls in their daily life either. They're asking that a seller of cars have one on hand to allow them to share in the service or privilege of test driving. It's not something they carry around or ride in like a wheelchair. It's not glasses. It's not... It's much more akin to the button that opens the door, isn't it? I don't think it is, Your Honor, because the disabled individual will need to modify that vehicle once purchased in order to operate it. And the test drive we're talking about is a test drive of a modified vehicle in order to see how it works, how it drives. So there is a modification. The dealerships here do not sell modified vehicles. That happens after purchase at the dealerships that sell mobility equipment. The test drive that's being sought is of a modified vehicle. No. If a dealership didn't allow the privilege of test driving their inventory, no problem. They're allowing it for some customers. So if it's feasible, and we're not at the feasibility stage, the question is whether they have to make adaptations so other customers who are disabled can participate in that privilege. There are many... The privilege of using the vehicle before trying it out, before driving it, right? Right. Thank you. Before buying it. I just feel like we keep skirting the issues. That's what it's about. And I appreciate counsel's argument. They don't have to allow anybody to test drive the vehicles. Of course they're not going to do that. They want people to come in and drive their vehicles. But since dealerships do it, that's his argument. Since they do it, since they allow that privilege of trying on the dress, test driving the car, why don't they have to make reasonable accommodations so disabled people can do that too? What's your best argument? Well, another accommodation would be enabling the disabled individual to ride along in the car as it's driven by someone else. That's a different accommodation. He wants the experience of driving it. What's your best argument that at the 12B6 stage your team wins? We don't sell modified vehicles. We don't have to make a modification so you can try out a modified vehicle. That's not a service we offer. In fact, test driving others. What's the service you don't offer? We don't offer modifications of vehicles in order to test drive them. Here's the deal. I think the difference between the words service and privilege matters because a service tells me that a car dealer, a salesman is going to drive me around. What about the privilege? The privilege is we're just selling cars. That's our inventory. If you want to go drive it, you want to test drive it, knock yourself out. We'll allow you the privilege of taking it. Well, a disabled person can't do that, so his argument is if you allow that privilege of test drive, you need to accommodate so that we can participate too, and I'm still waiting to hear what's your very best argument. In fact, test drives are not offered universally as a privilege. Okay, right, right. But for the dealerships that do, at the 12B6 stage, what's the barrier for this complaint to go forward? Dealerships deny members of the public test drives when they believe that they are not able to operate the vehicle safely or are not there for a legitimate purpose or their other indicia that this is not a serious customer. But that strikes me to be – I don't think you're taking the position that these disabled people are not serious customers. No, not at all. I'm saying that it's not a universal privilege offered to the public. Okay. I'm not sure why that makes any difference. If I'm a dealership and I deny someone the ability to test drive because they look shady and they're in shabby clothes and I think they're going to try to steal the car or they're intoxicated or they're underage or something, I don't see how that has any bearing on it, where you have two equally responsible adults with valid driver's licenses, one disabled and one not. I guess I don't understand how that even bears on it, that someone who has a specific legitimate reason not to be loaned the car for a few minutes, I don't understand how that even has any bearing on it. You know, I think we address the issue of access to vehicles to try them out, to examine them, to see how they operate in our briefs. There are many ways to do that without getting behind the wheel and modifying the vehicle to enable operation. It's like the customer who comes into Best Buy who's unable to use her hands. She's disabled. She wants to buy a computer and she wants to try out how the email and word processing program works. And she says, can you install some voice-activated software on that so I can test drive the computer and see how it works? It's not. Because when we get into the devil's in the details, when we get to the next step, as I said, I think we can easily envision all kinds of problems at the next step where this might prove to be an accommodation that asks too much because it's just not feasible. It's too expensive. You've given a long laundry list of those reasons. At the 12B6 stage, we're struggling to figure out why this complaint shouldn't get to that next step. Because it's both a modification and a personal device that the purchaser will have to buy themselves in order to operate the vehicle they are test driving. Thank you, Your Honors. Thank you very much. Thank you. And you have some rebuttal time remaining. Thank you very much. With my one minute left, I'd just like to go back to one issue I think the Court's going to have to deal with when reaching its decision, and that is the level of deference that we give the Department of Justice. Because the Court's already indicated that the statutory language, the congressional language, seems to fit this situation, right, to provide equal access and opportunity to services, privileges, accommodations, and so forth. It's very tough, then, to say that the Department of Justice has come up with a regulatory scheme that says when it comes to vehicle hand controls, you need to install them in order so they can do all that, that that is either arbitrary, capricious, or manifestly contrary. That's under a provision dealing with architectural. It's under a different part of the scheme. No, no. That's directly under that. That's the general rule. And the architectural barrier thing is directly under the general rule. Not that you're talking about the reg, the hand control reg. Are you not talking about the hand control reg? I am talking about the hand control reg. I'm saying the hand control regulation is what carries out the general rule. And my argument is that this court would have to say that is manifestly contrary to the language. It's arbitrary, it's capricious, and it's manifestly contrary to the purpose and language of the congressional language. Yeah, counsel, that's an interesting argument, and that goes back to, I think, a question a number of us have asked, and I asked just recently, which is maybe DOJ put that reg in the wrong place. But when it puts it under the section that is architectural, under a long line of cases, going back to Chenery, we are supposed to defer to the agency, and if we decide that that is not architectural, we don't get to second guess that the agency really meant to put it someplace else. It would have to go back to the agency and allow them to decide whether they thought it fit under personal devices or policies and practices or something else. Right. And so I guess my argument would be the vehicle hand controls, it would be just as much not architectural for the rental car agencies as it would be for a dealership, right? It's either architectural or it's not. And what I'm saying is that, yes, they put it under the language that says to remove barriers that are architectural in nature or communication barriers. This is language here. It's broader than that. But they identified it as such, and they identified facilities and other things. And the word architect is not defined, right? And we put in the dictionary definition. Actually, it is. The word architect. We have a definition for architectural, and your biggest problem, I think, is this just flies in the face of the common, ordinary sense of the term. Right. And so here, and, of course, we don't usually apply those. We actually look at what the Department of Justice has defined. And here they've said vehicle hand controls are physical impediments. Remember, in the technical assistance manual, it defines barriers. It says it's any physical impediment. And this is a physical impediment to the ability to use something. I know architectural, we think of swinging hammers. I get that. And that's why I've often thought it's a round peg in a square hole as well. But you can read it broadly enough where it fits there. And my only point is that the GOJ felt like it fit there when they're trying to fit how to fit it. And there are interpretive regulations, which are also entitled to deference. The technical assistance manual and the Federal Register all refer to this as being a barrier that needs to be removed if readily achievable. And it would also fit under the policy and procedures section as well. You pled in paragraph 18 of your complaint. And you seem to be paddling away from it as fast as you can. No, I'm not. I'm not. 18 and 21A, by the way, both discuss policies and procedures. All right. So it's an alternative argument. Thank you very much. Thank you, counsel. That case just argued is submitted. And we appreciate very much the interesting and helpful comments from all candidates.
judges: Graber, Bybee, Christen